Herff *et al. v.* Griggs.

Filed Jan. 15, 1890.

---

No. 13,816.

## Herff et al. *v.* Griggs.

**Former Adjudication.**—*Bill to Review Judgment.*—The rule upon the subject of former adjudication does not apply to a direct attack upon a judgment, a bill to review a judgment being such an attack.

**Mortgage.**—*Foreclosure.*—*Bill to Review Decree.*—*Registry Law.*— *Unrecorded Deed.*—*Mortgagees.*—Where third persons enter into the possession of land under a deed for the benefit of the grantees therein named, the deed being unrecorded, and hold possession continuously for more than forty

years, asserting their absolute ownership, and treating the land as their own, and at the end of that period execute a mortgage founded on a valuable consideration and accepted in good faith, the mortgagees, having neither actual notice of the deed nor that imparted by record, can not be deprived of their rights under their mortgage by one of the grantees, an infant of two years at the time of the conveyance to the mortgagors, who claims under the unrecorded deed executed forty years before, and the judgment of foreclosure will not be reviewed upon a complaint by such grantee grounded upon the discovery of new matter, alleging the facts as above, and the existence of the deed not known till after the judgment of foreclosure.

SAME.—*Mortgagees.—Bona Fide Purchasers.—*Mortgagees who acquire an interest in the land, in good faith and for a valuable consideration, occupy substantially the same position with reference to an unrecorded deed as a *bona fide* purchaser.

REAL ESTATE.—*Adverse Possession.—Color of Title.—*It is not necessary in order to constitute an adverse possession that there should be color of title; it is enough if there be an assertion of ownership and unbroken possession for the requisite length of time.

From the Miami Circuit Court.

*H. J. Shirk* and *J. Mitchell,* for appellants.

*L. Walker* and *W. B. McClintic,* for appellee.

ELLIOTT, J.—The complaint of Anthony W. Griggs seeks to have a decree of foreclosure reviewed and modified, and it sets forth at length the proceedings in the case in which the decree was rendered. The suit for foreclosure was brought by Sallie Herff, and Gustave Conradt filed a cross-complaint based on a junior mortgage. The notes and mortgage on which the foreclosure proceedings of Sallie Herff were founded were executed by John H. and Jane T. Griggs, the father and mother of Anthony W. Griggs, and the note on which Conradt's cross-complaint is founded was executed by Frances and Charles F. Griggs, but the mortgage securing it was executed by John H. and Jane T. Griggs. The appellee, · Anthony W. Griggs, was named as one of the heirs of Jane T. Griggs, who had died before the commencement of the foreclosure suit, and was made a defendant to the suit. On the decree sale was made, and the mortgaged property was

bought by Henry Reckhart, to whom a deed was executed by the sheriff in November, 1885.   The ground upon which the appellee, Anthony W. Griggs, sought to have the judgment reviewed was the discovery of material new matter, and the allegations of his complaint touching that subject are, in substance, these:   On the first day of January, 1842, Jacob W. Young was the owner of the real estate in controversy, and on that day executed a deed, for a valuable consideration, to the plaintiffs, Warren A. Griggs, Charles F. Griggs, and Oliver M. Griggs, all of whom were infants of tender years, and children of John H. and Jane T. Griggs ; that the persons last named immediately took possession of the real estate, under the deed, and occupied it thereafter with their children, the grantees in the deed executed by Young, until the 23d day of April, 1862, when they executed a deed for the west half of the lot to Sarah E. Griggs ; that Sarah E. Griggs subsequently conveyed the west half of the lot to Jane T. Griggs, and she afterwards conveyed it to Charles F. Griggs ; that by the death of Oliver M. Griggs in 1849, Jane T. Griggs acquired an interest in the property ; that at the time Young delivered the deed to John H. and Jane T. Griggs for the grantees therein named, the plaintiff was two years of age ; that he had no knowledge of the deed executed in 1842 by Young, nor any means of knowing that it was in the possession of the persons to whom it was delivered ; that it was concealed from him by those persons, and that they caused it to be generally reported that there was an unrecorded deed executed by Young vesting title in them ; that at the time the foreclosure suit was instituted the plaintiff had no knowledge or intimation of the existence of the deed executed by Young, nor is there any record thereof.

The complaint shows all the diligence that it was possible for a person in the plaintiff's situation to exercise. He knew nothing of the execution or existence of the deed by Young in 1842, and he can not be charged with negligence in not searching for an unknown instrument.

The rule upon the subject of former adjudication does not apply to a direct attack upon a judgment, and a bill to review a judgment is such an attack. It is in its essential features very like an appeal. *American Ins. Co.* v. *Gibson,* 104 Ind. 336. "A matter," declares the ancient maxim, " the validity of which is at issue in legal proceedings, can not be set up as a bar thereto."

The judgment upon a bill of review in a case where the plaintiff succeeds does not finally adjudicate the controversy ; all that it does is to set aside the judgment assailed and open the original case for trial. *Leech* v. *Perry,* 77 Ind. 422. The question, therefore, is, does the complaint for review make a *prima facie* case, entitling the plaintiff to have the cause again tried ? The effect of a judgment granting a review is not very different from a judgment on appeal awarding a new trial.

The complaint shows the delivery of the deed to third persons for the benefit of the grantees in January, 1842, and on the day of its delivery it became effective as against the parties to whom it was delivered. The registry of a deed adds nothing to its effect as between the immediate parties, it serves only to impart notice. *Wines* v. *Woods,* 109 Ind. 291 ; *Bever* v. *North,* 107 Ind. 544. If the case at our bar were one between the persons who executed the mortgages upon which the decree of foreclosure was founded and the plaintiff, there would be little difficulty, for, as between those parties, the deed is valid and effective, but the intervening rights of the mortgagees are such as to add an influential element to the case.

It is not alleged that the mortgages were not founded on a valuable consideration, nor is it charged that they were not in good faith accepted upon the belief that the mortgagors owned the land of which they were in possession, and, therefore, the presumption must be in favor of the mortgagees upon these points. Mortgagees who acquire an interest in the land in good faith and for a valuable consideration, oc-

cupy substantially the same position with reference to an un-
recorded deed as a *bona fide* purchaser of the land. *Gilchrist*
v. *Gough,* 63 Ind. 576 ; *Brower* v. *Witmeyer, ante,* p. 83 ;
*Jackson* v. *Reid,* 30 Kan. 10; *Mott* v. *Clark,* 9 Pa. St. 399 ;
*Trull* v. *Bigelow,* 16 Mass. 406. If the complaint can be re-
garded as stating a cause of action against the mortgagees, it
must be for the reason that it avers that the mortgagors went
into possession by virtue of the unrecorded deed, and held
under the title which it vested in the grantees.

The mortgagors entered into possession in 1842, and had
continuously held possession for more than forty years at the
time the mortgages were executed. If their possession can
be deemed adverse it had ripened into a fee simple long be-
fore the mortgages were executed, for a title by limitation is
a title in fee. *Sims* v. *City of Frankfort,* 79 Ind. 446 (449) ;
*Wilson* v. *Campbell,* 119 Ind. 286. The question, therefore,
narrows to the effect of this long continued possession upon
the rights of persons who occupy the position of *bona fide*
purchasers as against the real owner under a deed executed
forty years before the *bona fide* purchasers acquired their
rights, and not recorded until after the acquisition of those
rights.

The complaint avers that the mortgagors caused it to be
reported that they were the owners under an unrecorded
deed, and this was an assertion of ownership hostile to the
title of the plaintiff, as was the conveyance of the west half
of the lot. It may be true that the mortgagors did go into
possession under the deed executed to the appellee, and yet
be true that they disavowed his title and claimed adversely.
It is not necessary in order to constitute an adverse posses-
sion that there should be color of title ; it is enough if there
be an assertion of ownership and unbroken possession for the
requisite length of time. *Collett* v. *Board, etc.,* 119 Ind. 27 ;
*Roots* v. *Beck,* 109 Ind. 472. This doctrine prevails even as
between tenants in common, for if the one in possession dis-
avows the joint ownership, and claims exclusive title, the pos-

session for the length of time prescribed by law will invest him with an indefeasible title. *English* v. *Powell,* 119 Ind. 93.

It is settled law that the statute of limitations will run against an infant, and that if it once begins to run it continues unchecked, except in so far as the statute giving a limited time after the removal of the disability in which to sue may be considered as a check. The effect of this established rule is to give a person under the disability of infancy when the statute begins to run, two years after the removal of the disability in which to bring his action. *Wright* v. *Kleyla,* 104 Ind. 223; *Barnett* v. *Harshbarger,* 105 Ind. 410; *Sims* v. *Gay,* 109 Ind. 501; *Walker* v. *Hill,* 111 Ind. 223; *Davidson* v. *Bates,* 111 Ind. 391; *City of Indianapolis* v. *Patterson,* 112 Ind. 344; *Peelle* v. *State, ex rel.,* 118 Ind. 512. The plaintiff became of full age many more than two years before the mortgages were executed, and this case is not strengthened by the fact that he was an infant when his father and mother went into possession of the land.

The possession of the mortgagors was *prima facie* that of owners, since there was nothing to indicate that they were not the owners of the land of which they were in possession. Possession is evidence of title, and when continued for the length of time which creates ownership, is evidence of the highest title known to the law. *Robinoe* v. *Doe,* 6 Blackf. 85. Twenty years' possession will defeat the holder of the paper title. *Riggs* v. *Riley,* 113 Ind. 208. It results from these familiar rules, that, *prima facie* at least, the mortgagors were the owners in fee of the mortgaged premises, and this *prima facie* case is strengthened by the other facts disclosed by the complaint, for it appears that the parties in possession conveyed the land, as owners, and as owners mortgaged it. They did not convey as owners of an undivided interest, but as owners of the whole interest. If there is nothing countervailing a *prima facie* case, it will prevail.

We find nothing that overcomes the *prima facie* case as against mortgagees occupying the position, as do these mort-

gagees, of *bona fide* purchasers. No fact gave them actual notice, and no record imparted constructive notice. No inquiry would have given them notice of the unrecorded deed executed forty years, and more, before the acquisition of their rights. The most vigorous and diligent search which they could have been required to make would not have disclosed the existence of the unknown deed, and the possession of their mortgagors could not have been referred to any paper title, nor could it have been impeached by any deed of which even the claimant had knowledge. The only right to which the most vigilant search could have referred the mortgagors' possession was the right of ownership. The parties in possession represented by their mortgages that they were in possession as owners, and the mortgagees had a right to rely upon this representation, for neither fact nor record contradicted it; on the contrary, every fact open to observation supported it. Not only was there an assertion of ownership by possession, but there was a definite claim of ownership in the conveyance of the land, and in the report which the parties gave out that they held by an unrecorded deed. What more the mortgagees could have done than they did, we can not conceive; nor can we imagine what stronger evidences of ownership they could have been required to obtain, since the possession gave their mortgagors a title as perfect and as high as it was possible for them to secure. Standing, as the mortgagees do, in the favored position of *bona fide* purchasers, they can not be deprived of their rights under their mortgages by one claiming under an unrecorded deed executed forty years ago, for their position is a vast deal stronger and higher than that of their mortgagors.

If a party is a *bona fide* purchaser he will be protected, no matter how defective his grantor's title. Strong as this statement is, it is yet not so strong as the authorities warrant. One of the most able and philosophical of our law writers fully discusses this question, and in the course of his discussion

says: "In applying the doctrine of *bona fide* purchase—and this is the very essence of the doctrine—equity does not intend to pass upon and decide the merits of the two litigant parties; it does not decide that the title of the defendant is valid, and therefore intrinsically the better, and superior to that of the plaintiff. On the contrary, the protection given by way of defence theoretically assumes that the title of the purchaser is really defective as against that of his opponent; at all events, the court of equity wholly ignores the question of validity, declines to examine into the intrinsic merits of the two claims, and bases its action upon entirely different considerations." 2 Pomeroy Eq. Juris., section 739. In this instance, the mortgagees are protected, because they acquired in good faith a title which all things indicated was valid, and neither fact nor record, known to them, or which the utmost vigilance would have revealed to them, or to any one, clouded or shadowed the title of their mortgagors.

The decree of foreclosure is unimpeachable, and the complaint for review can not stand.

Judgment reversed.

Filed Jan. 15, 1890.